FOSTER v. CROSSIN and others.    (Two Cases.)

*(Circuit Court, D. Rhode Island. April 6, 1885.)*

1. PATENTS FOR INVENTIONS — INFRINGEMENT OF RECENT PATENT — VALIDITY — PRELIMINARY INJUNCTION.
   When the validity of a recent patent has not been judicially decided, a preliminary injunction may, nevertheless, be granted in a clear case of infringement.

2. SAME — DESIGN PATENT FOR JEWELRY — NOVELTY.
   Design patents No. 15,049 and 15,050, for designs for jewelry pins, *held* not void for want of patentable novelty.

Motion for Preliminary Injunction.

*W. B. Vincent,* for complainant.

*J. M. Brennan* and *W. R. Perce,* for respondents.

CARPENTER, J.    These bills pray an injunction to restrain the respondents from infringing letters patent, granted to the complainant June 10, 1884, for designs for jewelry pins, and numbered 15,049 and 15,050, respectively. The complainant now moves for a preliminary injunction. The respondents, in the first place, object that the patents are recent, and have not been found by any judicial decree to be valid; and they contend that in such case the court will not look further, but will hold that the complainant must fail for want of a judicial decision establishing the patents, or such a lapse of time—accompanied with the general acquiescence of the public—as may raise an equivalent presumption in favor of his right to recover on final hearing.

There are cases in which the judges have guided their discretion by this rule. Some of them are collected in Bump, Patents, p. 289, § 4921. The following cases to the same effect are cited by the respondents: *White* v. *S. Harris & Sons Manuf'g Co.* 5 Ban. & A. 571; S. C. 3 FED. REP. 161; *Warner* v. *Bassett,* 19 Blatchf. 145; S. C. 7 FED. REP. 468; *Jones* v. *Hodges,* Holmes, 37; *Fales* v. *Wentworth,* Id. 96; *Jones* v. *Field,* 12 Blatchf. 494; *Cross* v. *Livermore,* 9 FED. REP. 607; *Bradley & Hubbard Manuf'g Co.* v. *Charles Parker Co.* 17 FED. REP. 240. In all these cases it is to be noted, however, that there were other grounds for denying the motion besides that on which the

respondents here rely; and I think very few cases will be found in which an injunction has been refused solely on the ground here urged.

Undoubtedly, the production of the patent alone can in no case raise a presumption in favor of the patentee sufficient to justify the order of a preliminary injunction; and it is, perhaps, usually true that the most satisfactory basis for finding such a presumption will be in a judicial decision or in long uninterrupted use. But I am not prepared to say that the presumption can arise in no other way. It is true that a rule will be found laid down in many cases in terms which, taken by themselves, are broad enough to support the contention of the respondents; but it is also true that in many, if not most, of these cases the rule is stated more broadly than is necessary to the decision. I do not think the present current of decision tends to the establishment of a pointed rule such as is here claimed by the respondents. *New York Grape Sugar Co.* v. *American Grape Sugar Co.* 20 Blatchf. 386; S. C. 10 FED. REP. 835; *Steam-gauge & Lantern Co.* v. *Miller,* 8 FED. REP. 314.

I proceed, therefore, to consider whether the complainant has, on this motion, shown such a case as raises a clear presumption that he will be entitled to a decree on final hearing. Infringement is sufficiently proved, and, indeed, is not denied; but the respondents strenuously contend that the patents are void for want of patentable novelty. The distinctive feature of the design is fully stated in the claims of the patents. The claim of No. 15,049 is as follows:

"The design for a jewelry pin herein shown and described, the same consisting of a plate having the shape of a spoon, with the outline edge of the plate turned backward at a nearly uniform distance from its front, and the surface of the handle of the spoon showing an embossed or engraved ornamentation."

The claim of No. 15,050 is the same, with the substitution of the word "table-fork" for the word "spoon." The main feature of the design is described in the words, "with the outline edge of the plate turned backward at a nearly uniform distance from its front." It is suggested that this clause of the claim relates to the method of manufacture, rather than to the design of the finished product, and therefore cannot be sustained in a design patent; but I think the reading of the whole claim shows the true meaning to be that the design claimed consists, not in the method of construction, but in the peculiar rounded and finished form of the edge, like that of a table-spoon, which peculiar form necessarily results from the turning down of the edge of the plate, and is most clearly described by reference to the process of manufacture which produces it. The question, then, is whether this design is new and sufficiently distinctive to be patentable. The respondents read the affidavits of several persons, who testify that they have seen for sale in the market, at various times from July, 1880, down to the present time, jewelry pins made in the form of spoons and forks. Three examples of such pins are produced in evidence.

One of them is distinctly identified as a "specimen" of those sold by the affiant in the year 1881. The others are very imperfectly, if at all, identified as having been actually sold or made for sale, but they are stated by the witnesses to be similar to those which they have seen on sale. All these pins show embossed or engraved ornamentation, but they are all so made that there is a distinctly perceptible angle between the front and the edge of the spoon or fork which forms the pin.

Although the testimony by which these exhibits are verified is not of the most satisfactory kind, nevertheless, if the exhibits were exactly similar to the pins described in the patent, I should be unwilling to order an injunction. It is, therefore, necessary for the complainant to maintain the proposition that the rounded and smoothly-finished edge constitutes such a distinctive feature of the design as will support the patents.

Much light, as it seems to me, is thrown on this question by the affidavits read by the complainant. Seven witnesses, who have been engaged in the jewelry business in New York and Providence for different spaces of time, from 15 to 28 years, testify that so far as they know the pins made by the complainant, according to his design, were the first pins of that description known to the jewelry trade; that they were recognized by the trade as an original design; that the peculiar shape given to the edge by turning back the plate is distinctive and easily observed; that pins made with this shape are readily distinguished from those made like the exhibits produced by the respondents; and that the pins made by the complainant under his patents are in large demand, and have been, as affiants are informed, extensively copied by other persons. There are, indeed, affidavits produced by respondents in which the witnesses, who are in the jewelry trade and are apparently equally well able to judge of the matter, give their opinion that there is no substantial difference in design between the pins made by complainant and those which have formerly been sold. It seems t me, however, to be plain that the distinctive feature invented by the complainant, slight though it be, has been sufficient to create a large demand for the article in question, where there was before, to say the best of it, but a small demand. In view of the affidavits produced by the complainants, I can hardly believe that pins of the fork and spoon design have been generally sold in the jewelry trade before they were introduced by the complainant. Design, of course, relates solely to the appearance of the article to the ordinary purchaser; and, when the question is whether a difference of design be substantial and valuable, surely there can be no test better than the practical test which is furnished by observing the effect of the two designs on the appreciating observation of the purchasing public. I conclude that in this case the design is sufficiently distinctive to support the patents.

Some evidence has been introduced on both sides on the question

whether the complainant be the first inventor of the turned-over edge as applied to jewelry pins. On this point I do not think it necessary to say anything, except that I am clearly satisfied that the complainant is the first inventor.

Let a decree be entered, enjoining the respondents as prayed.